UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COMMUNITY ASSOCIATION UNDERWRITERS OF AMERICA, INC. a/s/o<br>TRUMP PARK RESIDENCES CONDOMINIUM<br>2 Caufield Place<br>Newtown, PA  18940<br>            Plaintiff,<br><br>        v.<br><br>MAIN LINE FIRE PROTECTION CORP.<br>337 North Main Street, Suite 11<br>New City, NY 10956<br><br>CAPPELLI ORGANIZATION, LLC<br>7 Renaissance Square<br>White Plains, NY 10601<br><br>LRC CONSTRUCTION, LLC<br>7 Renaissance Square<br>White Plains, NY 10601<br><br>FULLER DEVELOPMENT COMPANY, Inc.<br>7 Renaissance Square<br>White Plains, NY 10601<br><br>YORKTOWN REALTY ASSOCIATES, LLC<br>7 Renaissance Square, 4th Floor<br>White Plains, NY 10601<br><br>and<br><br>SULLIVAN ARCHITECTURE P.C.<br>115 Stevens Avenue<br>Valhalla, NY 10595<br><br>            Defendants. | CIVIL ACTION NO.:<br><br><br>JURY DEMAND<br>ENDORSED HEREON |

## COMPLAINT

Plaintiff, Community Association Underwriters of America, Inc., a/s/o Trump Park Residences Condominium (hereinafter referred to as "Plaintiff"), by and through undersigned

1

counsel, hereby demands judgment against the above-captioned Defendants, and states by way of complaint against them as follows:

## PARTIES

1.  Plaintiff is a corporation organized and existing under the laws of the State of Delaware with a principal place of business located at 2 Caufield Place in Newtown, PA; at all times relevant hereto, Plaintiff was – pursuant to a policy in full force and effect – the provider of an insurance policy on a property owned by Trump Park Residences Condominium (hereinafter "subrogor") located at 3770 Barger Street in Yorktown, NY (hereinafter the "subject property").

2.  Defendant Main Line Fire Protection Corp. ("Main Line") is, upon information and belief, a New York corporation with an address for service of process listed with the New York Secretary of State as 337 North Main Street (Suite 11) in New City, NY; upon information and belief, at all relevant times Main Line was in the business of, *inter alia*, designing, installing, maintaining, repairing, and/or inspecting fire-suppression (a/k/a sprinkler) systems.

3.  Defendant Cappelli Organization, LLC ("Cappelli") is, upon information and belief, a New York corporation with an address for service of process listed with the New York Secretary of State as 7 Renaissance Square in White Plains, NY; upon information and belief, at all relevant times, Cappelli was engaged in the business of, *inter alia*, providing condominium-construction and -development services, as well as selling condominium units to the public and thereby creating condominium associations.

4.  Defendant LPC Construction, LLC ("LPS") is, upon information and belief, a New York corporation with an address for service of process listed with the New York Secretary of State as 7 Renaissance Square in White Plains, NY; upon information and belief, at all relevant times, LPS was engaged in the business of, *inter alia*, constructing condominium buildings.

5. Defendant Fuller Development Company, Inc. ("Fuller") is, upon information and belief, a New York corporation with an address for service of process listed with the New York Secretary of State as 7 Renaissance Square in White Plains, NY; upon information and belief, at all relevant times Fuller was engaged in the business of, *inter alia*, providing condominium-development services.

6. Defendant Yorktown Realty Associates, LLC ("Yorktown") is, upon information and belief, a New York corporation with an address for service of process listed with the New York Secretary of State as 7 Renaissance Square (4th Floor) in White Plains, NY; upon information and belief, at all relevant times Yorktown was engaged in the business of, *inter alia*, selling condominium units to the public.

7. Defendant Sullivan Architecture P.C. ("Sullivan") is, upon information and belief, a New York corporation with an address for service of process listed with the New York Secretary of State as 115 Stevens Avenue in Valhalla, NY. Upon information and belief, at all relevant times Sullivan was engaged in the business of, *inter alia*, site-planning and architectural-design services.

## JURISDICTION AND VENUE

8. Jurisdiction is based on 28 U.S.C. §1332(a)(1) as this action involves a controversy between citizens of different states. Moreover, the amount in controversy exceeds the jurisdictional threshold of this Court (exclusive of interest and costs).

9. Venue is proper in this district based on 28 U.S.C. §1391(a) in that the events giving rise to this claim occurred within this district.

## STATEMENT OF FACTS

10. Upon information and belief, Cappelli, LPC, Fuller, Yorktown and Sullivan (hereinafter collectively the "Cappelli Defendants") were the developers and/or general

contractors in charge of the construction of the subject property pursuant to an agreement by and among them of which subrogor was an intended third-party beneficiary.

11. As part of the subject property's design, the Cappelli Defendants installed the sprinkler system at the subject property.

12. Subrogor retained Main Line to monitor, test, inspect, service and/or maintain the subject property's sprinkler system and all component parts thereof.

13. Prior to February 14, 2016, upon information and belief, Main Line did test, inspect, service and/or maintain the sprinkler system and all component parts thereof.

14. On February 14, 2016, as a result of the Cappelli Defendants' improper design, installation and insulation of the sprinkler system, as well as Main Line's failure to properly monitor, test, inspect and/or service the sprinkler system, the sprinkler line referred to above ("the subject pipe") froze and burst, causing substantial water damages.

15. As a direct and proximate result of the acts and/or omissions of the Defendants (as are described more fully below), subrogor sustained damage to its property, as well as additional expenses, in an amount in excess of $900,000.00; by operation of payments made pursuant to the terms and condition of the aforementioned insurance policy; Plaintiff became subrogated to the claims asserted in this action.

## COUNT I – NEGLIGENCE v. MAIN LINE

16. Plaintiff incorporates by reference the preceding averments as though set forth at length herein.

17. The aforementioned damages were the direct and proximate result of the negligence, carelessness and/or other unlawful conduct of Main Line – including negligent acts and/or omissions as performed by and through its agents, employees, and/or chosen

subcontractors, acting within the course and scope of their employment and/or agency – more specifically described as follows:

    (a)    failing to exercise reasonable care in the performance of duties in the supervising of the design, installation and insulation of the sprinkler system, including, but not limited to, carelessly and negligently performing the following:

        1. failing to competently supervise the design, installation and insulation of the sprinkler system in a safe and appropriate manner;

        2. failing to ensure that proper techniques were employed, and applicable safety procedures followed, as to the design, installation and insulation of the sprinkler system;

        3. failing to properly monitor the work of all agents and/or employees during the design, installation and insulation of the sprinkler system to ensure compliance with applicable safety procedures;

    (b)    Failing to exercise reasonable care in the performance of duties in the inspection and approval of the sprinkler-system work, including but not limited to carelessly and negligently performing the following:

        1. failing to competently monitor, maintain, inspect and/or test the sprinkler system;

        2. failing to ensure that proper techniques were employed, and applicable safety procedures followed, as to the design, installation and insulation of the sprinkler system;

        3. Failing to identify potential danger of freeze due to temperature of unheated space;

    (c)    failing to adequately instruct, supervise and/or train servants, employees and agents as to the proper ways to perform the tasks set forth in subparagraph (a) and (b);

    (d)    failing to adequately warn subrogor and others of the dangers resulting from the failure to exercise reasonable care as set forth in subparagraph (a) and (b) above;

    (e)    failing to provide, establish and/or follow proper and adequate controls so as to ensure the proper performance of the tasks set forth in subparagraph (a) and (b) above;

    (f)    failing to perform the tasks set forth in subparagraph (a) and (b) in conformity with prevailing industry and governmental specifications and standards;

(g)     failing to retain competent, qualified and/or able agents, employees or servants to perform the tasks set forth in subparagraph (a) and (b) above; and/or

(h)     violating the standards of care prescribed by statutes, rules, regulations, ordinances, codes, and/or industry customs applicable to this action.

18. As a direct and proximate result of such acts or omissions, subrogor's property was damaged and additional expenses were incurred in an amount in excess of $900,000.00; as described herein, Plaintiff became subrogated to the herein-asserted claims relating thereto.

**WHEREFORE**, Plaintiff respectfully requests judgment in its favor and against Main Line – jointly, severally, and/or in the alternative with the other Defendants in this action – in an amount in excess of $900,000.00, plus interest, costs of suit, reasonable attorney fees, delay damages, and such other relief as the Court deems appropriate under the circumstances.

### COUNT II – BREACH OF CONTRACT v. MAIN LINE

19. Plaintiff incorporates by reference the preceding paragraphs as though set forth at length herein.

20. In acting and/or failing to act as described herein, and as thereby causing the damages as alleged herein, Main Line breached the terms of a legally enforceable agreement with subrogor; specifically, Main Line failed to perform adequate and proper inspections of the subject property and its sprinkler system, which would have prevented this loss by alerting the subrogor to the inadequacy of heat and insulation in the vicinity of the subject pipe.

21. For its part, subrogor performed all of its obligations under the aforementioned agreement, as well as all conditions precedent to recovery on this count.

22. As a direct and proximate result of such acts or omissions, subrogor's property was damaged and additional expenses were incurred in an amount in excess of $900,000.00; as

described herein, Plaintiff became subrogated to the herein-asserted claims relating thereto.

**WHEREFORE**, Plaintiff respectfully requests judgment in its favor and against Main Line – jointly, severally, and/or in the alternative with the other Defendants in this action – in an amount in excess of $900,000.00, plus interest, costs of suit, reasonable attorney fees, delay damages, and such other relief as the Court deems appropriate under the circumstances.

## COUNT III – BREACH OF WARRANTIES v. MAIN LINE

23. Plaintiff incorporates by reference the preceding paragraphs as though set forth at length herein.

24. In conjunction with the monitoring, testing, inspecting, service and/or maintenance of the fire sprinkler system, Main Line expressly and/or impliedly warranted that its work would be performed in a good and workmanlike manner, conducive to creating a habitable building.

25. Thus, pursuant to all express and/or all implied warranties applicable to this action, Main Line's work was to be done in a timely, safe, professional, good and workmanlike manner.

26. Through Main Line's improper actions as described herein, Main Line breached the express and/or implied warranties applicable here, resulting in subrogor's – and ultimately Plaintiff's – damages.

27. For its part, subrogor performed all conditions precedent to recover based upon such breaches.

28. As a direct and proximate result of such acts or omissions, subrogor's property was damaged and additional expenses were incurred in an amount in excess of $900,000.00; as described herein, Plaintiff became subrogated to the herein-asserted claims

relating thereto.

**WHEREFORE**, Plaintiff respectfully requests judgment in its favor and against Main Line – jointly, severally, and/or in the alternative with the other Defendants in this action – in an amount in excess of $900,000.00, plus interest, costs of suit, reasonable attorney fees, delay damages, and such other relief as the Court deems appropriate under the circumstances.

### COUNT IV – NEGLIGENCE v. CAPPELLI DEFENDANTS

29. Plaintiff incorporates by reference the preceding paragraphs as though set forth at length herein.

30. Cappelli Defendants owed subrogor a duty of care to, *inter alia*, supervise, monitor, inspect and see to it that its subcontractors properly designed, installed and insulated the sprinkler system.

31. The aforementioned damages were the direct and proximate result of the negligence, carelessness and/or other unlawful conduct of Cappelli Defendants – including negligent acts and/or omissions as performed by and through their agents, servants, workmen, employees, servants and/or chosen subcontractors, acting within the course and scope of their employment and/or agency – more specifically described as follows:

    (a) failing to exercise reasonable care in the performance of duties in the supervising of the design, installation and insulation of the sprinkler system, including but not limited to carelessly and negligently performing the following:

        (1) failing to competently supervise the design, installation and insulation of the sprinkler system in a safe and appropriate manner;

        (2) failing to ensure that proper techniques were employed, and applicable safety procedures followed, as to the design, installation and insulation of the sprinkler system;

   (3) failing to properly monitor the work of all agents and/or employees during the design, installation and insulation of the sprinkler system to ensure compliance with applicable safety procedures.

(b) failing to adequately instruct, supervise and/or train servants, employees and agents as to the proper ways to perform the tasks set forth in subparagraph (a);

(c) failing to adequately warn subrogor and others of the dangers resulting from the failure to exercise reasonable care as set forth in subparagraph (a), above;

(d) failing to provide, establish and/or follow proper and adequate controls so as to ensure the proper performance of the tasks set forth in subparagraph (a) above;

(e) failing to perform the tasks set forth in subparagraph (a) in conformity with prevailing industry and governmental specifications and standards;

(f) failing to retain competent, qualified and/or able agents, employees, subcontractors or servants to perform the tasks set forth in subparagraph (a) above; and/or

(g) violating the standards of care prescribed by statutes, rules, regulations, ordinances, codes, and/or industry customs applicable to this action.

32. As a direct and proximate result of such acts or omissions, subrogor's property was damaged and additional expenses were incurred in an amount in excess of $900,000.00; as described herein, Plaintiff became subrogated to the herein-asserted claims relating thereto.

**WHEREFORE**, Plaintiff respectfully requests judgment in its favor and against the Cappelli Defendants – jointly, severally, and/or in the alternative with the other Defendant(s) in this action – in an amount in excess of $900,000.00, plus interest, costs of suit, reasonable attorney fees, delay damages, and such other relief as the Court deems appropriate under the circumstances.

## COUNT V – BREACH OF EXPRESS and IMPLIED WARRANTIES v. CAPPELLI DEFENDANTS

33. Plaintiff incorporates by reference the preceding paragraphs as though set forth at length herein.

34. In building and developing and/or serving as general contractor in creating the subject property, the Cappelli Defendants impliedly warranted that they would build and sell the subject property in a reasonably workmanlike manner, safely functional and not defective, thereby creating a habitable building.

35. The design, assembly, construction, installation and/or insulation of the sprinkler system was not performed in a professional, competent, and workmanlike manner for the reasons set forth herein, and as such posed a hazard to subrogor and the subject property.

36. Accordingly, the Cappelli Defendants – by and through their agents, servants, workmen, employees, and/or chosen subcontractors – breached express and implied warranties on which subrogor had rights to rely, including but not limited to the implied warranty of quality workmanship and the subject property's implied warranty of habitability.

37. Pursuant to the duties given rise to by their roles in creating the subject property, the Cappelli Defendants expressly and/or impliedly warranted to subrogor that all work performed in connection with the construction and sale of the subject property would be free from defects.

38. In light of the defects and negligence described herein, the Cappelli Defendants did not provide subrogor with a property, nor specifically a sprinkler system, of merchantable quality, reasonably fit for the purposes for which intended, nor designed, installed, insulated or otherwise constructed in a good and workmanlike manner, nor conducive to creating a habitable building.

39. The failures described in the foregoing paragraph thereby constitute breaches of express and implied warranties subrogor had rights to rely upon, including but not limited to those

described in the Uniform Commercial Code.

40. Subrogor used the subject property and the sprinkler system in a foreseeable and ordinary manner, of which the Cappelli Defendants should have been aware, and for which the Cappelli Defendants' expertise was relied upon; and yet subrogor sustained the damages described herein due to the defects, breaches and negligence described above.

41. As a direct and proximate result of such breaches, subrogor's property was damaged and additional expenses were incurred in an amount in excess of $900,000.00; as described herein, Plaintiff became subrogated to the herein-asserted claims relating thereto

**WHEREFORE**, Plaintiff respectfully requests judgment in its favor and against the Cappelli Defendants – jointly, severally, and/or in the alternative with the other Defendant(s) in this action – in an amount in excess of $900,000.00, plus interest, costs of suit, reasonable attorney fees, delay damages, and such other relief as the Court deems appropriate under the circumstances.

### COUNT VI – BREACH OF CONTRACT v. CAPPELLI DEFEDANTS

42. Plaintiff incorporates by reference the preceding paragraphs as though set forth at length herein.

43. In causing the damage as alleged herein, the Cappelli Defendants breached the terms of the agreement of which subrogor was an intended third-party beneficiary, as expressed and/or implied therein and/or according to law.

44. For its part, subrogor performed all its obligations under the aforementioned agreement, as well as all conditions precedent to recovery on this count.

45. As a direct and proximate result of such breaches, subrogor's property was damaged and additional expenses were incurred in an amount in excess of $900,000.00; as

described herein, Plaintiff became subrogated to the herein-asserted claims relating thereto.

**WHEREFORE**, Plaintiff respectfully requests judgment in its favor and against the Cappelli Defendants – jointly, severally, and/or in the alternative with the other Defendant(s) in this action – in an amount in excess of $900,000.00, plus interest, costs of suit, reasonable attorney fees, delay damages, and such other relief as the Court deems appropriate under the circumstances.

**de Luca Levine LLC**

BY: _____
Attorneys for Plaintiff,
Community Association Underwriters of
America, Inc. a/s/o Trump Park Residences
Condominium

Dated: <u>May 14, 2018</u>