UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
COMMUNITY ASSOCIATION UNDERWRITERS
OF AMERICA, INC. a/s/o TRUMP PARK
RESIDENCES CONDOMINIUM,

                    Plaintiff,

        -against-

MAIN LINE FIRE PROTECTION CORP.,
CAPPELLI ORGANIZATION, LLC, LRC
CONSTRUCTION, LLC, FULLER DEVELOPMENT
COMPANY, INC., YORKTOWN REALTY
ASSOCIATES, LLC, and SULLIVAN
ARCHITECTURE P.C.,

                    Defendants.
---------------------------------------------------------------x

**OPINION AND ORDER**

18 Civ. 4273 (PMH)(JCM)

Plaintiff Community Association Underwriters of America, Inc. a/s/o Trump Park Residences Condominium ("Plaintiff") commenced this action against Main Line Fire Protection Corp. ("Main Line" or "Defendant") and Yorktown Realty Associates, LLC ("Yorktown") (together, "Defendants"), for allegedly designing and installing a defective sprinkler system ("Sprinkler System") at Trump Park Residences Condominium ("Property").[1] (Docket No. 1). Plaintiff now moves pursuant to Fed. R. Civ. P. 15(a) for leave to file a third amended complaint in order to reassert a direct claim of negligence against Main Line following dismissal of this claim on May 22, 2019. (Docket Nos. 152, 153, 155, 158, 162). Defendant opposes the motion. (Docket Nos. 154, 159, 163). For the reasons set forth below, Plaintiff's motion is granted.

---

[1] All claims against Cappelli Organization, LLC ("Cappelli"), LRC Construction, LLC ("LRC"), Fuller Development Company, Inc. ("Fuller"), and Sullivan Architecture P.C. ("Sullivan") were dismissed pursuant to the parties' stipulations of discontinuance. (Docket Nos. 124, 149.)

## I. BACKGROUND

This action arises from the freezing and bursting of the Sprinkler System on February 14, 2016, which allegedly resulted in substantial water damage to the Property. (Docket No. 1). Plaintiff claimed that the damage was the result of, *inter alia*, Defendant's negligence relating to the installation, insulation, design, maintenance and inspection of the Sprinkler System. (*Id.* ¶¶ 16-18). Plaintiff filed an Amended Complaint on October 25, 2018, (Docket No. 60), and a Second Amended Complaint ("SAC") on December 6, 2018, (Docket No. 68). The SAC alleged three claims against Main Line: (1) negligence for failure to supervise the design, installation and insulation of the Property's Sprinkler System; (2) breach of contract for failing to perform adequate inspection of the Sprinkler System; and (3) breach of express and implied warranties resulting in damage to the Property. (SAC ¶¶ 16-28).

On January 2, 2019, Main Line filed a motion to dismiss these claims on the grounds that Plaintiff failed to state a claim under Fed. R. Civ. P. 12(b)(6). (Docket Nos. 76, 77, 78). On May 22, 2019, the court granted Main Line's motion. (*See* May 22, 2019 Minute Entry); (Docket No. 152-2 at 15[2]). The court held, in relevant part, that Plaintiff failed to allege any of the three elements of negligence. (Docket No. 152-2 at 9). The court found that Plaintiff's claims regarding "Main Line's duty of care arises out of contract" and were "boilerplate" since Plaintiff did "not plausibly state who Main Line contracted with, who the third-party beneficiaries might be, or any facts at all about the purported contract's term." (*Id.*). The court also found that Plaintiff's allegation that "Main Line had a duty to and did test, monitor, inspect, service and or maintain" the Sprinkler System on the property is "100 percent conclusion" and must be ignored. (*Id.*). The court further held that Plaintiff failed to plausibly allege breach or causation. (*Id.* at

_____

[2]All page numbers, unless otherwise specified, refer to the numbers affixed upon the electronic filing of the document.

10-12).  The court also dismissed Plaintiff's claims of breach of contract and breach of express and implied warranties against Main Line on the ground that Plaintiff failed to plausibly allege the existence of a contract or any promises regarding the quality of the work contracted. (*Id.* at 12-14).  Accordingly, the court granted Main Line's motion to dismiss Plaintiff's three claims against it.  Main Line, however, remained a party in the case as a third-party defendant. (*Id.* at 25-26).  The Court ultimately held that "[i]f [P]laintiff gets discovery relating to Main Line as it proceeds against the other defendants who have asserted cross-claims against Main Line, [P]laintiff can always ask to amend later if it can make out the required showing." (*Id.* at 15).

On April 14, 2020, Plaintiff moved for leave to file a third amended complaint to reassert its direct claims against Main Line based on information yielded through discovery. (Docket Nos. 152, 153).  Plaintiff's proposed claims against Main Line included breach of contract, breach of warranty, and negligence, and were premised largely on Main Line's alleged failure to properly inspect, insulate, install and design the Sprinkler System. (Docket No. 152-1 ¶¶ 14-26).  Defendant opposed Plaintiff's motion, (Docket No. 154), and Plaintiff filed a reply in further support of its motion, (Docket No. 155).  Shortly thereafter, however, Plaintiff abandoned its claim against Main Line premised on an "inspection theory," maintaining that its theory of liability is instead premised on an "installation theory," and filed a supplemental reply in further support thereof. (*See* Docket No. 158).  Accordingly, on July 1, 2020, Plaintiff filed a revised proposed Third Amended Complaint ("Third Amended Complaint").[3] (Docket No. 162).  In its proposed Third Amended Complaint, Plaintiff only asserts a negligence claim against Main Line based on its allegedly defective installation and insulation of the Sprinkler System. (Docket No.

---

[3] This Opinion and Order assumes the truth of Plaintiff's factual allegations and draws all reasonable inferences in Plaintiff's favor for the limited purpose of deciding the motion presently before the Court. *See Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharm., Inc.*, 847 F.3d 92, 93 (2d Cir. 2017).

162 ¶¶ 12-15).  Plaintiff alleges that as part of the Property's design and construction, "Main Line designed and installed" the Sprinkler System, and "reviewed and approved the installation of the insulation freeze-protecting" the Sprinkler System. (*Id.* ¶¶ 7-8).  Plaintiff further alleges that the February 14, 2016 freeze and burst of the Sprinkler System "was caused by Main Line's improper design and installation" and "improper review and approval of the installation of the insulation[.]" (*Id.* ¶ 10).  Specifically, Plaintiff claims that Main Line was negligent for failing to "competently perform and/or review the design, installation and insulation" of the Sprinkler System, failing to ensure that proper techniques were followed, and failing to "properly monitor and/or review the work of all agents, employees, and/or relevant co-subcontractors during the design, installation and insulation" of the Sprinkler System. (*Id.* ¶ 15).  Defendant filed supplemental oppositions to Plaintiff's motion. (Docket Nos. 159, 163).

## II.  DISCUSSION

Pursuant to Rule 15(a), courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2).  "Under this liberal standard, a motion to amend should be denied only if the moving party has unduly delayed or acted in bad faith, the opposing party will be unfairly prejudiced if leave is granted, or the proposed amendment is futile." *Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 452 (S.D.N.Y. 2016).  Defendant argues that Plaintiff's proposed Third Amended Complaint should be denied because: (1) Plaintiff has engaged in undue delay, dilatory tactics and bad faith, (2) it would result in undue prejudice to Defendant, and (3) Plaintiff's negligence claim is futile on the grounds that (i) Plaintiff fails to cure pleading deficiencies previously identified by the Court, and (ii) it is untimely. (Docket No. 163).

### A.  Undue Delay

Defendant argues the Court should deny Plaintiff's proposed Third Amended Complaint on the ground that Plaintiff has engaged in undue delay. (Docket No. 163 at 6).  Defendant maintains that Plaintiff's motion rests on what Plaintiff "knew or should have known back in 2017, not on any recent discovery or deposition testimony." (*Id.*).  Defendant also argues that Plaintiff has been "consistently dilatory, waiting until and after deadlines to prosecute this case." (*Id.*).  However, "[d]elay alone, in the absence of bad faith or prejudice, is not a sufficient reason for denying a motion to amend." *Duling v. Gristede's Operating Corp.*, 265 F.R.D. 91, 97 (S.D.N.Y. 2010); *see also Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339 (2d Cir. 2000) ("[W]e have held repeatedly that 'mere delay' is not, of itself, sufficient to justify denial of a Rule 15(a) motion …") (internal citations omitted).  Furthermore, "delay is rarely fatal to a Rule 15 motion if it can be explained." *Duling*, 265 F.R.D. at 97.  "Although *some* explanation must be provided to excuse a delay … even vague or 'thin' reasons are sufficient, in the absence of prejudice or bad faith." *Id.* (emphasis in original) (internal citations omitted).  Moreover, "under the liberal standard of Rule 15(a), leave to amend may be appropriate at any stage of litigation." *Id.*; *see also Richardson Greenshields Securities, Inc. v. Lau*, 825 F.2d 647, 653 n.6 (2d Cir. 1987) (collecting cases where leave to amend was granted after delays ranging from two to five years); *Blagman v. Apple, Inc.*, No. 12 Civ. 5453(ALC)(JCF), 2014 WL 2106489, at *3 (S.D.N.Y. May 19, 2014) (collecting cases where leave to amend was granted after delays of up to seven years).

Here, Plaintiff offers sufficient reasons for its delay.  Plaintiff maintains that after its negligence claim was dismissed in May 2019, it acquired new information to reassert its direct claims against Main Line with greater factual specificity as they relate to improper installation.

(Docket Nos. 153 at 7; 158 at 2).  This discovery includes, in pertinent part, the deposition of Michael Jevnik ("Jevnik"), Main Line's owner, which was taken on February 6, 2020. (Docket No. 158 at 2).  Thus, Plaintiff discovered new information in February 2020, filed its motion in April 2020, and submitted its  proposed Third Amended Complaint in July 2020.  The Court finds that "the time period at issue here is not substantial." *Blagman*, 2014 WL 2106489, at *3.

Furthermore, Defendant's argument that Plaintiff was previously aware of the facts underlying its proposed Third Amended Complaint is unavailing.  "Simply alleging that the plaintiff could have moved to amend earlier than [it] did … is insufficient to demonstrate undue delay." *Agerbrink*, 155 F. Supp. 3d at 452; *see also Dilworth v. Goldberg*, 914 F. Supp. 2d 433, 460 (S.D.N.Y. 2012) ("[T]he motion to amend will not be denied by reason of plaintiffs' delay in alleging facts that were previously within their knowledge"); *Randolph Foundation v. Duncan*, No. 00 Civ. 1172, 2002 WL 32862, at *3 (S.D.N.Y. Jan. 11, 2002) ("[T]he fact that a party may have had evidence to support a proposed amendment earlier in the litigation does not, by itself, give rise to an inference of bad faith."); *Affiliated FM Insurance Co. v. Liberty Mechanical Contractors, Inc.*, No. 12 Civ. 5160, 2013 WL 4526246, at *5 (S.D.N.Y. Aug. 27, 2013) (which allowed amendment after nine months despite movant's knowledge of relevant information at the time of initial pleading because a party "need not prove that they uncovered new facts or law" in order to be granted leave to amend).  Accordingly, Defendants must show bad faith or undue prejudice in connection with the delay in order to warrant denial of the motion.

**B. Bad Faith**

Defendant maintains that Plaintiff has engaged in bad faith and dilatory tactics, and thus, denial is warranted. (Docket No. 163 at 7).  Specifically, Defendant contends that Plaintiff has "violated multiple court orders in this case," and the proposed Third Amended Complaint

contains numerous representations that are "contradicted by Plaintiff's own expert." (*Id.* at 7); (*see also* Docket No. 159 at 8-9). Defendant also argues that Plaintiff's inconsistencies relating to privity-of-contract allegations is a "bad-faith attempt to avoid application of the six-year statute of limitations for construction defense." (Docket No. 163 at 7).

To the extent Defendant argues that any inconsistencies in Plaintiff's allegations are strategic, this is insufficient for a finding of bad faith. *See Town of New Windsor v. Tesa Tuck, Inc.*, 919 F. Supp. 662, 676 (S.D.N.Y. 1996) (which found no bad faith where a complaint reflected a change in litigation strategy, noting that "neither long delay nor the fact that a proposed amendment is motivated by an afterthought of counsel as to the best theory upon which to proceed … suffice as reason[] for denying leave to amend.") (internal quotations omitted); *Blagman*, 2014 WL 2106489, at *3 (which denied defendant's argument that plaintiff's delay was "strategic" where it was "plausible to infer that [] discovery was a means to narrow the plaintiff's claims [].."); *Foman v. Davis,* 371 U.S. 178, 181–82 (1962) ("The Federal Rules reject the approach that pleading is a game of skill in which one misstep ... may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.") (internal quotations omitted). Furthermore, Defendant's claim that the proposed Third Amended Complaint contains allegations contradicted by Plaintiff's expert is a question of fact more appropriately assessed at the summary judgment phase. Moreover, Defendant "offer[s] no direct evidence of [P]laintiff's bad motive." *Ramos v. O'Connell*, 169 F.R.D. 260, 262 (W.D.N.Y. 1996). Accordingly, Defendant has not sustained its burden of showing that Plaintiff has acted in bad faith.

**C. Undue Prejudice**

Defendant also argues that Plaintiff's proposed Third Amended Complaint should be denied because it would result in undue prejudice. (Docket No. 163 at 8). "[P]rejudice alone is insufficient to justify a denial of leave to amend; rather, the necessary showing is '*undue* prejudice to the opposing party.'" *A.V. by Versace, Inc. v. Gianni Versace S.p.A.*, 87 F. Supp. 2d 281, 299 (S.D.N.Y. 2000) (emphasis in original) (internal citations omitted); *see also Agerbrink,* 155 F. Supp. 3d at 454 (same). To determine whether the proposed amendment will cause undue prejudice, courts "generally consider whether the assertion of the new claim or defense would '(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction.'" *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000) (quoting *Block v. First Blood Assoc.*, 988 F.2d 344, 350 (2d Cir. 1993)). Central to this analysis is the extent to which the new claims arise from the existing ones and whether a party had prior notice of the new claim. *See Blagman,* 2014 WL 2106489, at *3*.

"Courts also consider the particular procedural posture of the case." *Agerbrink*, 155 F. Supp. 3d at 454; *see also Ruotolo v. City of New York*, 514 F.3d 184, 192 (2d Cir.2008) ("Undue prejudice arises when an 'amendment [comes] on the eve of trial and would result in new problems of proof.'" (alteration in original) (quoting *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981)); *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003) (which upheld denial of leave to amend sought after discovery had closed and while summary judgment motion was pending); *Zorilla v. Carlson Restaurants Inc.*, 255 F. Supp. 3d 465, 478–79 (S.D.N.Y. 2017) ("Prejudice is suffered by one who, for lack of timely notice that a suit has been instituted, must set about assembling evidence and constructing a defense when the case is

already stale.") (internal quotations omitted).  Furthermore, the "prejudice inquiry involves a balancing process," weighing any potential prejudice the opposing party would experience if the amendments were granted against any prejudice the moving party would suffer if its proposed amendment were denied. *Oneida Indian Nation of N.Y. v. Cty. of Oneida, N.Y.*, 199 F.R.D. 61, 77 (N.D.N.Y. 2000).  "The non-moving party bears the burden 'of demonstrating that substantial prejudice would result were the proposed amendment to be granted.'" *Agerbrink,* 155 F. Supp. 3d at 454 (internal citations omitted); *see also Oneida Indian Nation of N.Y.*, 199 F.R.D. at 77 (noting that where moving party provides explanation for delay, opposing party must make "greater showing" of prejudice).

Defendant argues that the proposed Third Amended Complaint would result in undue prejudice because "[g]ranting leave at this stage of the litigation would be granting Plaintiff license to leverage additional costs as a means to get a cost-of-defense settlement," and would "force Main Line to incur unnecessary costs relating to additional motion practice and trial preparation." (Docket No. 163 at 8).  However, these allegations do not "rise to a level that justifies" denying Plaintiff leave to amend. *Agerbrink,* 155 F. Supp. 3d at 454.  The need for additional motion practice and trial preparation is not sufficient to constitute undue prejudice. *See JPMorgan Chase Bank, N.A. v. IDW Grp., LLC*, No. 08 CIV. 9116(PGG), 2009 WL 1357946, at *5 (S.D.N.Y. May 12, 2009) (which held that the additional resources defendant will have to expend in post-amendment trial preparation are "not so significant as to constitute undue prejudice."); *United States ex rel. Raffington v. Bon Secours Health Sys., Inc.*, 285 F. Supp. 3d 759, 766 (S.D.N.Y. 2018) ("Mere allegations that an amendment 'will require the expenditure of additional time, effort, or money do not themselves constitute undue prejudice.'") (internal citations omitted).  Plaintiff also filed its motion to amend prior to the close of discovery, (*see*

April 29, 2020 Minute Entry, extending deadline to complete discovery to May 29, 2020), the scheduling of a trial date, and summary judgment briefing. *See Agerbrink,* 155 F. Supp. 3d at 455 (which held there was no undue prejudice where plaintiff filed her motion before the close of discovery, and neither a summary judgment briefing schedule nor a trial date had been set); *JPMorgan Chase Bank, N.A.*, 2009 WL 1357946, at *5 (which allowed amendment where there were "no pending dispositive motions and no trial date"); *A.V. by Versace, Inc.*, 87 F. Supp. 2d at 299 (which granted leave to amend where trial date had not been set and discovery had not been completed).

Furthermore, Defendant had prior notice of Plaintiff's proposed amendment because it "arises from the same facts pled" in the original complaint. *Agerbrink*, 155 F. Supp. 3d at 455. Defendant has been involved in this case from its start in May 2018, *(see* Docket No. 1), and since then, has participated fully in virtually every major phase of this litigation, including discovery, motion practice and court conferences.  In addition, Defendant moved to dismiss the claims in Plaintiff's SAC that are premised on the same underlying facts that form the basis of Plaintiff's proposed Third Amended Complaint. *See supra*, Section I.  Thus, any argument that Defendant will suffer undue prejudice resulting from lack of notice is without merit. *See JPMorgan Chase Bank, N.A.*, 2009 WL 1357946, at *5 (which held there was no undue prejudice where the "legal issues raised by the proposed amendment and likely defenses overlap considerably with those involved in the original claims against" defendant, and where "both the original Complaint and the motion practice to date has demonstrated" defendant's "central role" in the matter); *Presser v. Key Food Stores Co-op, Inc.*, 218 F.R.D. 53, 56 (E.D.N.Y. 2003) (which held that there was no prejudice to defendants when plaintiff sought to amend to add a class of plaintiffs because the class action would present the defendant with the same issues

involved in the original lawsuit); *A.V. by Versace*, 87 F. Supp. 2d at 299 (which found no undue prejudice to defendants where the proposed amendments "d[id] not raise factual claims unrelated to the events [in] its original [complaint]."); *Monahan*, 214 F.3d at 284 (which held that courts will allow amendments to pleadings where the party "had knowledge of the facts giving rise to the [amendment]."). Finally, Defendant's contention that granting the amendment would provide Plaintiff with leverage relating to settlement is "conclusory and unpersuasive." *Acad. of Ambulatory Foot Surgery v. Am. Podiatry Ass'n*, 516 F. Supp. 378, 382-83 (S.D.N.Y. 1981). Accordingly, the Court finds Defendant has not sustained its burden of demonstrating it would suffer undue prejudice as a result of the proposed Third Amended Complaint.

**D. Futility**

"It is well established that '[l]eave to amend need not be granted … where the proposed amendment would be futil[e].'" *Williams v. Citigroup Inc.*, 659 F.3d 208, 214 (2d Cir. 2011) (quoting *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 18 (2d Cir. 1997)) (alterations in original). Proposed amendments are futile if they would fail to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See IBEW Local Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scot. Grp., PLC*, 783 F.3d 383, 389 (2d Cir. 2015). "Accordingly, the proposed amendment must be viewed in the light most favorable to the party moving to amend … and leave to amend should only be denied if the moving party can prove no set of facts which would entitle [them] to relief." *Presser*, 218 F.R.D. at 56; *see also Dougherty v. Town of North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 91–92 (2d Cir. 2002) (which reversed district court's denial of amendment as futile because, although defendants "vigorously dispute[d]" plaintiff's version of events, the "proposed amended complaint adequately set[ ] forth specific facts, which if proven, c[ould] support a finding of [defendant's liability]."). Thus,

"a motion to amend will not be denied as futile unless the amendment is 'frivolous or facially insufficient.'" *Randolph Found.*, 2002 WL 32862, at *4 (quoting *Weg v. Macchiarola,* 729 F. Supp. 328, 341 (S.D.N.Y.1990)); *see also Schwimmer v. Guardian Life Ins. Co.,* No. 93 Civ. 0428(RWS), 1996 WL 146004, at *3 (S.D.N.Y. Apr. 1, 1996) (which granted leave to amend where amendment was "not so frivolous or outlandish to render it futile," even though amended complaint would not withstand summary judgment motion).

## 1. Negligence

Defendant argues that Plaintiff's claim is futile because it fails to cure the pleading deficiencies previously identified by the court, principally as it relates to duty. (Docket Nos. 159 at 6-9; 163 at 1-5). Specifically, Defendant argues that Plaintiff alleges Main Line breached two unrecognized duties: (1) a duty to install the Subject Pipe less than 11 inches from the attic floor, and (2) a duty to review and approve the work of another subcontractor (the insulation subcontractor), with whom Main Line apparently had no relationship. (Docket No. 163 at 3). In support of its argument, Defendant references the subcontract, which states, in relevant part:

> General Scope of Work: 1. Furnish all labor, materials, equipment, and insurances necessary to perform all Fire Protection Work as shown on drawings and specification dated 3/17/06 by the firm of Sullivan Architecture, PC and the firm of Edwards & Zuck, Consulting Engineers dated 11/11/05 …

(Docket No. 163 at 4). Defendant maintains that Main Line's subcontract includes no mention of insulation, or of any duty to "review" and "approve" any insulation. (*Id.* at 3). In sum, Defendant argues that, even accepting as true all of Plaintiff's allegations, "there is no legal or factual basis for Plaintiff's explicitly or implicitly alleged duties of 11-inch installation or affirmative supervision (review and approval)." (*Id.* at 5).

Because this is a diversity action, the Court applies New York law. *See Lee v. Bankers Trust Co.*, 166 F.3d 540, 545 (2d Cir. 1999) ("A federal court sitting in diversity applies the

choice of law rules of the forum state.").  Under New York Law, an action for negligence requires a plaintiff to prove three elements: "'(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof.'" *Alfaro v. Wal-Mart Stores, Inc.*, 210 F.3d 111, 114 (2d Cir. 2000) (quoting *Akins v. Glens Falls City Sch. Dist.*, 53 N.Y.2d 325, 333 (1981)).  "The existence of a duty is thus a *sine qua non* of a negligence claim: 'In the absence of a duty, as a matter of law, no liability can ensue.'" *Id.* (quoting *McCarthy v. Olin Corp.,* 119 F.3d 148, 156 (2d Cir. 1997)); *see also Strauss v. Belle Realty Co.,* 65 N.Y.2d 399, 402 (1985) ("A defendant may be held liable for negligence only when it breaches a duty owed to the plaintiff[.]").  "The question of the existence and scope of an alleged tortfeasor's duty 'is, in the first instance, a legal issue for the court to resolve.'" *Alfaro*, 210 F.3d at 114 (quoting *Waters v. New York City Hous. Auth.,* 69 N.Y.2d 225, 229 (1987)); *accord Palka v. Servicemaster Mgmt. Servs. Corp.,* 83 N.Y.2d 579, 585 (1994). Moreover, the Court is mindful that "[i]dentifying the scope of an alleged tortfeasor's duty is 'not something derived or discerned from an algebraic formula.'" *Alfaro*, 210 F.3d at 114 (quoting *Palka*, 83 N.Y.2d at 585).  New York courts "fix the duty point by balancing factors, including the reasonable expectations of parties and society generally, the proliferation of claims, the likelihood of unlimited or insurer-like liability, disproportionate risk and reparation allocation, and public policies affecting the expansion or limitation of new channels of liability." *Palka,* 83 N.Y.2d at 586; *see also Travelers Prop. & Cas. Ins. Co. v. AGG Creperie*, 42 F. Supp. 3d 444, 446 (E.D.N.Y. 2014) ("Tort liability depends upon a duty of care, and the existence of a duty is 'a question of law requiring courts to balance sometimes competing public policy considerations.'") (quoting *Espinal v. Melville Snow Contractors, Inc.,* 98 N.Y.2d 136, 139 (2002)).

Generally, "'a contractual obligation, standing alone, will impose a duty only in favor of the promisee and intended third-party beneficiaries[.]'" *Travelers Prop. & Cas. Ins. Co.*, 42 F. Supp. 3d at 447 (quoting *Eaves Brooks Costume Co. v. Y.B.H. Realty Corp.,* 76 N.Y.2d 220, 226 (1990)). "By contrast, 'a contractual obligation, standing alone, will generally not give rise to tort liability in favor of a third party.'" *Id.* (quoting *Espinal*, 98 N.Y.2d at 138). In other words, "if the defendant owes no duty to the plaintiff, the action must fail." *Pasternack v. Lab. Corp. of Am. Holdings*, 807 F.3d 14, 19 (2d Cir. 2015). In certain circumstances, "parties outside a contract are permitted to sue for tort damages arising out of negligently performed or omitted contractual duties." *Palka,* 83 N.Y.2d at 586. The New York Court of Appeals has recognized three such circumstances: "(1) where the contracting party, in failing to exercise reasonable care in the performance of [their] duties, launches a force or instrument of harm; (2) where the plaintiff detrimentally relies on the continued performance of the contracting party's duties; and (3) where the contracting party has entirely displaced the other party's duty to maintain the premises safely." *See Espinal,* 98 N.Y.2d at 140 (internal quotations & citations omitted).

Here, the Court finds that Plaintiff has plausibly alleged a negligence claim against Main Line because the proposed Third Amended Complaint sufficiently alleges the existence of a duty on the part of Main Line, as well as breach and causation. Plaintiff alleges that, as a third-party beneficiary, Main Line owed it a duty pursuant to the subcontract it had with Yorktown, specifically to design, install, review and approve the installation of the insulation freeze-protecting the Sprinkler System at the Property. (Docket No. 162 ¶¶ 6-8). Plaintiff further alleges that, as the Sprinkler System "design-and-installation contractor," Main Line had a duty to foreseeable users of the Property to "use due care in the design and installation of a sprinkler system that could be effectively insulated and otherwise protected from freezing." (*Id.* ¶ 13).

14

Defendant allegedly breached this duty when it failed to competently "perform and/or review the design, installation and insulation of the [S]prinkler [S]ystem" by leaving excess space between the pipes and ceilings, and otherwise failing to make sure proper techniques were followed. (*Id.* ¶¶ 14-15). Plaintiff further contends that as a result of the faulty design and installation of the Sprinkler System, "the sprinkler line … froze and burst, causing substantial water damage." (Docket No. 162 ¶¶ 9-10). Thus, viewing the pleadings in the light most favorable to the Plaintiff, a duty can be imposed on Main Line as the contractor who installed the system for failing to correctly install the system so that it could be properly insulated to ensure that the sprinkler line would not freeze and burst. "Such conduct can easily be described as launch[ing] a force or instrument of harm, [] because it actually created the dangerous condition that caused the plaintiff's injury." *Travelers Prop. & Cas. Ins. Co.*, 42 F. Supp. 3d at 448 (citations omitted).

Finally, Plaintiff sufficiently alleges that Main Line's breach caused Plaintiff's damages, stating that as a "direct and proximate result" of Main Line's acts or omissions, Plaintiff's property was damaged. (Docket No. 162 ¶ 15). The Court finds that Plaintiff plausibly alleges the existence of a duty, breach, and causation to sustain a negligence claim. *See Alley Sports Bar, LLC v. SimplexGrinnell, LP*, 58 F. Supp. 3d 280, 289 (W.D.N.Y. 2014) (which held that plaintiff plausibly alleged a negligence claim to survive motion to dismiss where plaintiff alleged, for instance, that "but for Defendant's failure to adequately drain the system as it promised to do, Plaintiff would not have been injured."). Thus, accepting as true all factual allegations set forth in the proposed Third Amended Complaint, and drawing all reasonable inferences in Plaintiff's favor, *see Pasternack*, 807 F.3d at 18, the Court finds that Plaintiff has set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

15

**2.  Statute of Limitations**

Defendant further argues that Plaintiff's negligence claim is untimely. (Docket No. 159 at

10).  Specifically, Defendant maintains that because the genesis of Plaintiff's construction theory

is in the construction-era contracts, which included Main Line's Subcontract, the accrual period

began running in 2007, and expired in 2013. (*Id.*).  Plaintiff contends, however, that this rule of

accrual for construction defect claims does not apply here because it was a "stranger" to the

Subcontract. (Docket No. 153 at 11-12).  "Under New York law, the statute of limitations is an

affirmative defense, and the defendant bears the burden of proving that the plaintiff's claim is

untimely." *St. John's Univ., New York v. Bolton*, 757 F. Supp. 2d 144, 156–57 (E.D.N.Y. 2010);

*see also Bethpage Water Dist. v. Northrop Grumman Corp.*, 884 F.3d 118, 125 (2d Cir. 2018)

("As the statute of limitations is an affirmative defense, the defendant bears the burden of

proof.").  "[D]ismissal is appropriate at the pleading stage only if a complaint clearly shows that

the claim is out of time." *Harris v. City of New York,* 186 F.3d 243, 250 (2d Cir. 1999); *see also

St. John's Univ.*, 757 F. Supp. 2d at 157 (which held that "[f]or a defendant's statute of

limitations arguments to succeed, the plaintiff must 'plead[ ] itself out of court.'") (quoting *In re

marchFIRST Inc.,* 589 F.3d 901, 904–05 (7th Cir. 2009)).  Therefore, "[d]ismissal is proper only

when, drawing all reasonable inferences in favor of the plaintiff, the court concludes that the

plaintiff's own factual allegations prove the defendant's statute of limitations defense." *St. John's

Univ.*, 757 F. Supp. 2d at 157.

In New York, negligence claims are governed by a three-year statute of limitations.

CPLR § 214(4).  It is well-settled that "[a]n owner's cause of action against a contractor for

defective construction, no matter how the claim is characterized (negligence, breach of contract,

or breach of warranty) accrues upon completion of construction." *Regent Ins. Co. v. Storm King*

*Contracting, Inc.,* No. 06 Civ. 2879(LBS), 2008 WL 563465, at *3 (S.D.N.Y. Feb. 27, 2008)

(citing *City Sch. Dist. v. Stubbins & Assocs., Inc.,* 85 N.Y.2d 535, 538 (1995)); *see also Rite Aid*

*of New York, Inc., v. R.A. Real Estate, Inc.,* 40 A.D.3d 474, 474 (1st Dept. 2007) ("A cause of

action predicated on defective construction accrues on the date of completion of the 'actual

physical work' … even if the claimed defect is latent[.]") (quoting *Cabrini Med. Ctr. v. Desina*,

64 N.Y.2d 1059, 1061, (1985)); *Heritage Hills Soc., Ltd. v. Heritage Dev. Grp., Inc.,* 56 A.D.3d

426, 427 (2nd Dept. 2008) (which held that a faulty construction and design claim "accrued upon

the date of completion of construction, not when the injury [to the property] occurred or when

the defective condition was discovered").  However, "[t]here is no need to apply this rule to third

persons such as bystanders." *Royal Ins. Co. of Am. v. RU-VAL Elec. Corp.*, 918 F. Supp. 647,

657 (E.D.N.Y. 1996) (citing *Cubito v. Kreisberg*, 69 A.D.2d 738, 742 (1979), *aff'd*, 51 N.Y.2d

900 (1980)).

   The parties dispute the nature of the relationship between Plaintiff and Main Line and

whether there is any privity between them, which is an essential fact in determining the statute of

limitations in this case.  The Court, therefore, concludes that because "resolution of the

[D]efendants' statute of limitations argument requires a fact-specific evaluation," it would be

premature at this stage to deny the Third Amended Complaint as time barred. *Canon U.S.A., Inc.*

*v. Cavin's Bus. Sols., Inc.*, 208 F. Supp. 3d 494, 501 (E.D.N.Y. 2016); *see also Garcia v. Pancho*

*Villa's of Huntington Vill., Inc.*, 268 F.R.D. 160, 166 (E.D.N.Y. 2010) ("[T]he statute of

limitations is an affirmative defense, the determination of which requires a consideration of the

merit of both parties' claims and defenses."); *Ortiz v. City of New York*, 755 F. Supp. 2d 399, 401

(E.D.N.Y. 2010) (which held that because a statute of limitations defense can be highly fact

dependent, "[a] motion to dismiss is often not the appropriate stage to raise affirmative defenses like the statute of limitations.").

The Court finds this issue would be more appropriately assessed at the summary judgment stage to determine whether there is truly any genuine issue of material fact relating to the timeliness of Plaintiff's claim. *See Bice v. Robb*, 324 F. App'x 79, 81 (2d Cir.2009) (which reversed and remanded dismissal of claim on the pleadings because the "court was obligated to give the plaintiffs the opportunity for full discovery and to determine whether there was 'a genuine issue as to any material fact' relating to timeliness" where the timeliness turns on a number of unresolved issues); *Canon U.S.A., Inc.*, 208 F. Supp. 3d at 502 (which denied motion to dismiss claim premised on statute of limitations defense, noting that defendants could raise this issue at the summary judgment stage instead). Accordingly, the Court will not deny Plaintiff's motion to amend on statute of limitations grounds.

## III.  CONCLUSION

For the foregoing reasons, Plaintiff's motion for leave to file its proposed Third Amended Complaint is granted.  Plaintiff shall serve and file its Third Amended Complaint within ten days of the date of this Order.

The Clerk is respectfully requested to terminate the pending motion (Docket No. 152).

Dated:   August 28, 2020
         White Plains, New York

SO ORDERED:

JUDITH C. McCARTHY
United States Magistrate Judge

18